[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in New Haven, Connecticut on July 6, 1985. The husband is 46 years old, was born in Poland and is in apparently good health. He is employed as a senior electronic technician with Ascom Hasler in Shelton, Connecticut and earns $44,772 per year. His first marriage ended in an annulment shortly after he arrived in this country. He is a high school graduate. He has rented a room from friends in Beacon CT Page 11826 Falls close to the family home since the parties separated in March of 2000. The wife is 47 years old and was also born in Poland. She is also apparently in good health and is employed by the State of Connecticut as a Polish interpreter and earns $18,900 per year. She currently resides in the family home at 6 Munson Road in Beacon Falls, Connecticut. She has four years of college education and received a degree in psychology. The parties have one minor child, a son Daniel 13 years of age who was born on December 12, 1986. Daniel is the subject of a custody evaluation conducted by the Family Relations Office. He lives with his mother at the family home. The child has some learning disabilities and is in a special class in school.
The parties are of modest means. Aside from some savings and the husband's retirement accounts, their principal asset is the jointly owned real estate at 6 Munson Road in Beacon Falls. Their respective affidavits show a fair market value of between $250,000 and $289,900 for the property, although the wife testified that, in her opinion, the value was $240,000. There is no first mortgage, however, the husband's financial affidavit indicates that there is $10,000 home equity line of credit. Using their savings and some gifts from the wife's mother, the parties purchased a lot in Beacon Falls in December of 1987 for the sum of $60,300. They proceeded to clear the lot and to build the home over the course of several years. They used savings and a home equity line for the construction. Prior to that time they had lived with the plaintiff's mother in New Haven. They paid no rent, but performed odd jobs for her mother. The husband testified that they were like "slaves in the house." The atmosphere there was not entirely pleasant since the husband did not have a warm relationship with his mother-in-law, and the latter apparently pitted the wife against her sister in a classic battle for their loyalty and affection. Eventually, the mother gave the other daughter an interest in the home. Over the course of the marriage, the gifts to the wife were frequent and substantial, totaling at least $50,000. No promissory notes were signed or asked for.
The case was tried over the course of portions of three days, and the Court heard extensive testimony from the parties and other witnesses. The Court listened to charges and countercharges of infidelity and deceit. Testimony conflicted as to the extent of the respective parties' contributions to the marriage and the construction of their home. Each was passionate in their belief that they alone have acted and will act in the best interest of their minor child, whose demonstrated emotional and educational needs demand that they both pull together in his best interest. Each views their role as from opposite ends of the spectrum. The father sees the need for structure and discipline, as well as the need for formal schooling. On the other hand, while the mother sees the need for school, she believes that there are viable alternatives, in CT Page 11827 particular a modeling career for her son. She has gone so far as to sign him up with an agent and has taken him out of school at times to pursue this avenue. According to testimony and the evidence, it is plain to this Court that the mother is openly critical of authority, be it the boy's father or teachers, if those persons hold opinions contrary to hers, and that the child is made aware of her criticism. Moreover, the Court believes that she has consistently and seriously undermined the child's relationship with his father, if not to the point of alienation. This overall attitude and behavior on her part is of serious concern. At this stage, the acrimony and mutual distrust is so great, that this Court does not believe they are capable of working together for the benefit of their son without some major professional intervention. In short, the Court has been presented with a veritable "Gordian Knot."
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed equally to said breakdown. The Court heard no conclusive or credible evidence of infidelity by either party.
 4. The presumptive level of basic child support is $62 per week payable by the wife to the husband, however, the Court finds that it is appropriate and equitable to apply the deviation criteria set forth in Sections 46b-215a-3 (b)(5)(A), (6)(B), and (6)(C) of the Child Support and Arrearage Guidelines Regulations on the basis of the coordination of total family support, the best interest of the minor child, and other equitable factors.
 5. That the fair market value of the real estate is $275,000. The Court makes a further finding that CT Page 11828 the wife's mother made gifts to the wife totaling more than $50,000 over the course of the marriage which were used in large measure for the parties' benefit, mainly in the purchase of the lot and the construction of the family home, and that it would be equitable and appropriate to give the wife a somewhat larger share of the real estate.
 6. That after hearing the testimony of both parties and that of the Family Relations Officer and a review of her report as on file with the Court (Defendant's Exhibit E):
 a. That the minor child would benefit from a more structured home environment;
 b. That the minor child has made some academic progress while in the care of the wife;
 c. That the minor child should remain in the familiar surroundings of the family home;
 d. That it is in the best interest of the minor child that his father should be the primary physical custodian, and that the father is more likely to encourage a viable relationship with both parents, than the mother would were the roles reversed; and
 e. That the child would benefit significantly from therapy in order to ensure his healthy growth and development, his success at school, as well as to learn how to cope with the marital breakup and the detrimental effects of the high conflict relationship of his parents.
 7. That based upon the employment history of the wife, as well as her educational background, she has a greater earning capacity than is reflected on her current financial affidavit.
 ORDER 1. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown, and they are each hereby declared to be single and CT Page 11829 unmarried.
 2. The parties shall have joint legal custody of the minor child, DANIEL KUSIK, born December 12, 1986. The primary physical custody of the minor child shall be with the husband, subject to the reasonable, liberal and flexible visitation rights of the wife. Initial visitation with the wife shall be, at a minimum, every other weekend from Friday 5:00 P.M. until Sunday at 8:00 P.M., every Tuesday and Wednesday from the end of the school until 7:00 P.M., four (4) consecutive weeks during the summer school vacation, and at such other times as the parties may agree. The Christmas holiday shall be divided as follows: Christmas Eve from 3:00 P.M. to 10:00 P.M. and Christmas Day from 10:00 AM. to 3:00 P.M. In the year 2000, the wife shall have Christmas Day with the child and in 2001 she shall have Christmas Eve, alternating thereafter. The parties shall share the other major holidays on an alternating basis. The parties shall consult with one another concerning all major issues involving the minor child, including but not limited to, health, education, and religious affiliation and training. In the event that parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office for mediation and recommendation prior to a determination by the Court. This matter shall be monitored by the Court on an annual basis during the minority of the child, and the parties and their attorneys shall report to the Court on a date assigned to them during the first month following the first anniversary of this Memorandum of Decision, and annually thereafter. The parties shall meet with Family Relations at least one week prior to the annual review.
 3. Commencing October 6, 2000, and weekly thereafter, the husband shall pay to the wife the sum of $50.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or October 6, 2005, whichever shall sooner occur.
 4. As set forth in the Findings, no child support is CT Page 11830 awarded to the husband at this time.
 5. The husband shall have exclusive possession of the jointly owned real estate located at 6 Munson Road, Beacon Falls, Connecticut, subject to any existing indebtedness, and he shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify, and hold the wife harmless from any further liability thereunder. The wife shall vacate said premises no later than October 15, 2000, or at such other time as the parties may agree. As to said real estate, the parties shall list same for sale no later than July 1, 2005, with a mutually acceptable broker who is a member of the Multiple Listing Service or other similar organization, familiar with real estate values in the Beacon Falls area, at an agreed upon asking price. If the parties are unable to agree upon a broker, each shall choose a broker who, in turn shall pick third broker, and the listing price shall be the average of all three brokers. Unless the parties shall otherwise agree, they shall accept any bona fide offer without unusual conditions, which is within 3% of the listing price. Upon sale of the property, from the proceeds shall be paid the customary and ordinary costs associated with a sale of real estate, including broker and attorney fees, conveyance taxes, and any mortgages and liens. After the payment of these sums, the net proceeds shall be divided 40% to the husband and 60% to the wife.
 The foregoing notwithstanding, at the option of either party, either may purchase the other's interest in the property. However, if both parties wish to purchase the interest of the other, then the husband shall be given the first opportunity to do so and he must be prepared to close title within 90 days of his notice to the wife of his intent to purchase. In order for any buyout to take place, if the parties cannot agree upon a price, the parties must obtain a certified appraisal by a qualified appraiser familiar with property values in the area. In the event that the parties are unable to agree upon an appraiser, each party shall select an appraiser who, in turn, shall agree upon a third CT Page 11831 qualified appraiser who shall determine fair market value. The net value upon which the plaintiffs purchase shall be made shall be the fair market value less the cost of the appraisal and the current balance of any existing mortgage or home equity line, if any, but estimated closing costs SHALL NOT be taken into consideration. From the balance, the purchasing party shall pay to the other their percentage of the net as set forth above.
 While he occupies same, the husband shall have the sole responsibility for the payment of the balance of the mortgage or home equity, if any, and the payment of insurance and real estate taxes until transfer of title or sale. He shall have the sole responsibility for repairs costing $250 or less. Both parties shall share the cost of any maintenance, repairs, or replacements in excess of $250 in the same proportion as their share of the net proceeds. Either party may advance the full cost of same and an adjustment shall be made at time of sale or transfer. Neither party shall further encumber the property or draw on any home equity without the agreement of the other. The Court shall retain jurisdiction with regard to any conflicts arising out of this issue.
6. Personal property shall be divided as follows:
 A. The minor child's furniture shall remain in the family residence.
 B. The home furnishings (other than the child's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
 C. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same. CT Page 11832
 D. All bank accounts, including the balances at the Naugatuck Valley Savings Bank and the Bank of Boston, shall be divided equally between the parties, as of the date of the division.
 E. The wife shall keep her jewelry, clothing and personal effects free and clear of any claim by the husband. The husband shall be entitled to keep his clothing and personal effects free and clear of any claim by the wife.
 7. The husband shall maintain and pay for health insurance for the minor child during the minority of the child, or if the child shall turn eighteen years old and is still in high school, then, in that event, the obligation shall continue until the first day of next month following graduation from high school or his nineteenth birthday, whichever shall sooner occur. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child shall be divided by the parties, 70% by the husband and 30% by the wife. The provisions of Section 46b-84
(e) shall apply. IN ADDITION, the parties shall within thirty (30) days following the date of this Memorandum of Decision, engage the services of a mutually acceptable psychiatrist or psychologist for evaluation and therapy of the minor child as outlined in the Findings. If the parties are unable to agree on a therapist, then the HUSBAND shall choose a name from a list of three names provided by Family Relations, and his choice shall be binding. BOTH PARTIES shall cooperate with the course of therapy, including the attendance at any session if recommended by the therapist, and the parent with whom the child is with during the time set for any given appointment shall provide transportation to and from therapy, unless the parties otherwise agree.
 8. The husband shall maintain the existing group term life insurance in the amount of $60,000, and shall name the minor child beneficiary thereof during the minority of the child, or if the child shall turn eighteen years old and is still in high school, CT Page 11833 then, in that event, the obligation shall continue until the first day of next month following graduation from high school or his nineteenth birthday, whichever shall sooner occur, and so long as same is an incident of his employment and available to him for a reasonable premium.
9. The retirement accounts shall be divided as follows:
As to the IRA:
 Within thirty (30) days from the date of this Memorandum of Decision, the husband shall transfer to the wife, or as she may otherwise direct, a sum equal to one half (1/2) of the then balance in the Boston 1784 Growth and Income Fund.
 As to the 401(k) Plan:
 Effective as of the date of this Memorandum of Decision, the then balance of the Ascom Holding, Inc. 401(k) Savings Plan ("Plan") of the husband through his employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by counsel for the husband, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 10. The parties shall alternate the use of the personal exemption for the minor child on their state and federal income tax returns commencing with the husband in the tax year 2000. Each shall promptly execute the necessary documentation and deliver same in a timely manner to the other for filing with the IRS and/or state taxing authority CT Page 11834 on an annual basis.
 11. The parties shall share equally the proceeds, if any, from their pending legal action against the builder of their home regarding their claims of environmental damage.
 12. The parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify, and hold each other harmless from any further liability thereon.
 13. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action.
 14. The Court hereby orders an Immediate Wage Withholding Order pursuant to Section 52-362 C.G.S. in order to secure the payment of the alimony order.
THE COURT
SHAY, J.